UNITED STATES of America, Plaintiff–Appellee,

v.

William R. SMITH, Jr., Defendant–Appellant.

No. 95–1440.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1995.

Decided April 5, 1996.

Barry Rand Elden, Chief of Appeals, Office of U.S. Atty., Crim. Appellate Div., Matthew D. Tanner, Office of U.S. Atty., Civ. Div., Chicago, IL, for Plaintiff-Appellee.

Gerald J. Collins, Chicago, IL, for Defendant-Appellant.

Before BAUER, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted the defendant of theft of an interstate shipment, interstate transportation of a stolen vehicle, and interstate transportation of stolen goods. He appeals his conviction on the grounds that the district court erred in denying his motion to dismiss the superseding indictment, admitting certain evidence over a FED.R.EVID. 403 objection, and allowing the government to cross-examine him regarding certain specific instances of conduct under FED.R.EVID. 608(b). We affirm.

I

On March 23, 1993, the defendant William R. Smith, Jr., was a driver-in-training with Born's Transfer, a small trucking company located in South Holland, Illinois. He had applied for the driving position the week before, and the company had not yet been able to confirm the validity of his Virginia commercial driver's license. That afternoon, Smith accompanied Jeff Bennett, a Born's driver, to pick up a load of food products from Active Warehouse in Hammond, Indiana. The shipment was bound for Foodland, a store located in Detroit, Michigan. After picking up the load, they returned to Born's facility in South Holland. Bennett left Smith in the truck while he went into Born's office to determine who would drive the load to Foodland. When Bennett came outside a few moments later, the truck, its load (which was valued at $16,000), and Smith were gone. Nobody had instructed Smith to take the load to Foodland. The truck and trailer were found on April 14, 1993, in the parking lot of a Dearborn, Michigan motel. The key was in the ashtray, and the trailer was empty. Foodland never received the shipment.

The government filed a criminal complaint against Smith on April 13, 1993, charging that he had violated 18 U.S.A. § 659 by stealing the Foodland shipment. Smith was arrested on July 27, 1993, and he made an initial appearance before the district court on July 28, 1993. On August 3, 1993, United States District Judge Brian Duff of the Northern District of Illinois revoked Smith's supervised release from a conviction for conspiring to steal an interstate shipment of copper in 1991. Judge Duff revoked Smith's supervised release, in part, because of Smith's arrest for the March 23 theft, and he sentenced Smith to one year of imprisonment.[1] On August 5, 1993, the district court granted the government's motion, which was agreed to by Smith's counsel, to dismiss the criminal complaint without prejudice.

On March 18, 1994, a grand jury indicted Smith for the March 23, 1993, theft of the Born's Transfer truck and trailer and the Foodland-bound cargo. Count one charged him with theft of an interstate shipment in violation of 18 U.S.C.A. § 659, and count two charged him with transportation of stolen goods in interstate commerce in violation of 18 U.S.C.A. § 2314. The grand jury returned a superseding indictment on September 14, 1994, which, in addition to the original two counts, charged Smith with one count of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C.A. § 2312. The district court denied Smith's motion to dismiss the indictment for unnecessary delay after finding that Smith had failed to make

1. Other factors that played a role in Judge Duff's decision to revoke Smith's supervised release included Smith's violation of the conditions of his supervised release by failing to make scheduled reports to his probation officer, testing positive for cocaine, and failing to attend required drug therapy.

the required showing of prejudice. Smith pleaded not guilty and was tried by a jury.

Prior to trial, the government filed a motion in limine for the admission of two pieces of evidence under FED.R.EVID. 404(b). The first was the testimony of Cathy Hayden, who had been romantically involved with Smith in October 1991. During that time, Hayden and Smith had traveled to different scrap yards selling the copper off a truck Smith had stolen. They had stayed in various hotels, and according to Hayden, Smith had told her to register them in her name because "the feds was [sic] looking for him." Smith had also told her that the copper shipment "wasn't the first truck" he had stolen. The second piece of Rule 404(b) evidence was Smith's conviction, pursuant to a guilty plea, for conspiring to steal the 1991 copper shipment. The district judge granted the motion in limine and admitted Hayden's testimony, along with evidence of the 1991 copper theft, under Rule 404(b) to allow the government to use that information to prove Smith's intent to steal the Born's Transfer shipment.

Smith testified on his own behalf, and the defense's case consisted solely of his testimony. He denied stealing the truck or its cargo. He testified that Mrs. Born, the owner of Born's Transfer, had told him to take the truck to Detroit and that he had ditched it after she refused to wire him money for various expenses. He denied telling Cathy Hayden that he had stolen other shipments.

Prior to trial, the government filed a notice of intent to cross-examine Smith pursuant to FED.R.EVID. 608(b) regarding three truck-related thefts for which Smith had neither been charged nor convicted. After Smith took the stand, the government followed through on its promise and cross-examined Smith regarding the thefts he had allegedly committed. The first theft concerned a shipment of steel that Smith had been hired to take from New Jersey to Michigan in June 1990. Smith admitted to transporting the steel but denied stealing the cargo. He testified that he left the truck and its cargo at a truck stop prior to reaching his destination. The second theft regarded a shipment of steel that Smith had been hired to take from Maryland to Pennsylvania in October 1990. Smith again admitted to transporting the steel but denied stealing the cargo, stating that he left the truck and its cargo at a truck stop short of his destination. Finally, the government questioned Smith regarding his failure to transport a load of cargo in November 1990 for which he had been paid a $100 trip advance. Smith denied ever working for the trucking firm or receiving the $100 advance. The government did not attempt to rebut Smith's denials through extrinsic evidence.

On October 13, 1994, the jury convicted Smith on all counts. On January 25, 1995, the district court sentenced him to twenty-one months of imprisonment on each count, to be served concurrently. Smith filed a timely notice of appeal.

## II

### A

Initially, Smith argues that the district court erred in denying his motion to dismiss the indictment for unnecessary delay. Smith based his motion to dismiss on the argument that the government's requested dismissal of the complaint following the revocation of his supervised release, and subsequent re-indictment immediately prior to the end of his revocation sentence, violated his right to due process by denying him the opportunity to "resolve" the revocation proceeding and the Foodland theft charges simultaneously. Smith alleges he suffered prejudice because, as a result of the delay, he was precluded from serving the revocation sentence and the sentence for the Foodland theft concurrently.

The Due Process Clause plays a limited role in protecting a defendant from undue prosecutorial delay. In order to prevail on a claim that a pre-indictment delay violated due process, a defendant must show that the prosecutorial delay caused him "actual and substantial prejudice." *United States v. Canoy*, 38 F.3d 893, 901 (7th Cir. 1994). Once the defendant makes an adequate showing of prejudice, the burden shifts to the government to justify the delay. *United States v. Sowa*, 34 F.3d 447, 451 (7th

Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995). We review a district court's decision to deny a motion to dismiss for prosecutorial delay for abuse of discretion. *United States v. Fuzer*, 18 F.3d 517, 519 (7th Cir.1994).

■■■ In order to make the requisite showing of actual prejudice, a defendant must show more than the mere *possibility* that the delay prejudiced him. *United States v. Marion*, 404 U.S. 307, 326–27, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). "[T]he prejudice must be concrete and substantial; a defendant is not deprived of due process if he is only 'somewhat prejudiced by the lapse of time.'" *Canoy*, 38 F.3d at 902 (quoting *United States v. Lovasco*, 431 U.S. 783, 796, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977)). Thus, where a defendant cannot show that the harm underlying his claim of prejudice would not have occurred but for the delay, the alleged prejudice is too speculative to support a due process claim.

We touched on the requisite level of certainty necessary to support a due process claim in a similar context in *Fuzer*. In that case, the defendant's claimed prejudice from the pre-indictment delay was the denial of the opportunity to serve state and federal sentences relating to the same criminal conduct concurrently. *Fuzer*, 18 F.3d at 520. We rejected that argument, reasoning that since the defendant did not have a right to serve his state and federal sentences concurrently, he did not suffer actual prejudice when denied the opportunity for the district court possibly to cause his sentences to run concurrently. *Id.*; *see also United States v. Hoslett*, 998 F.2d 648, 659 (9th Cir.1993) (finding claimed prejudice from being unable to serve sentences concurrently too speculative); *United States v. Sherlock*, 962 F.2d 1349, 1354 (9th Cir.1989) (same), *cert. denied*, 506 U.S. 958, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). Stated another way, the defendant in *Fuzer* did not suffer actual prejudice because he could show only that without the delay there was a mere possibility that he would have served his state and federal sentences concurrently.

In light of the above, Smith must show that if he had been sentenced for the Foodland theft while serving the revocation sentence he would have had a right to serve the sentences concurrently. Smith was sentenced on January 25, 1995, under the 1994 United States Sentencing Guidelines. Except under limited circumstances not applicable here, § 5G1.3 provided a district court with the discretion to sentence a defendant already subject to an undischarged term of imprisonment concurrently or consecutively. U.S.S.G. § 5G1.3(c) (1994).[2] Application note 4 addressed this specific situation and set forth a strong preference for consecutive sentences:

> If the defendant was on ... supervised release at the time of the instant offense, and has had such ... supervised release revoked, the sentence for the instant offense should be imposed to be served consecutively to the term imposed for the violation of ... supervised release in order to provide an incremental penalty for the violation of ... supervised release (in accord with the policy expressed in §§ 7B1.3 and 7B1.4).

U.S.S.G. § 5G1.3, appl. note 4 (1994).

■■■ Had there been no pre-indictment delay, Smith would not have had a right to serve his sentences concurrently. Indeed, the district court's discretion to sentence Smith either concurrently or consecutively translates into Smith having had only the possibility of receiving a concurrent sentence. Because a mere possibility of prejudice is insufficient to qualify as actual prejudice, the district court did not abuse its discretion in denying Smith's motion to dismiss.

## B

■■■ Smith next argues that the district court erred in not excluding under FED. R. EVID. 403 Cathy Hayden's testimony that the "feds" were looking for him in connection with other truck thefts. In order for evidence to be excluded under FED. R. EVID. 403, its probative value must be "substantial-

---

2. A subsequent amendment to § 5G1.3 has clarified the extent of a district court's discretion under this section. U.S.S.G. app. C, amend. 535 (1995).

ly outweighed" by the danger of its prejudicial effect. We accord significant deference to a district court's discretionary Rule 403 determination. *United States v. Pulido*, 69 F.3d 192, 204 (7th Cir.1995).

Smith argues that Hayden's testimony was unduly prejudicial because it inundated the courtroom with specific acts evidence of intent, the actual effect of which was to prove Smith's bad character. Although we have said that the government may not "flood the courtroom" with specific acts evidence on the pretext that specific intent is at issue, *United States v. Draiman*, 784 F.2d 248, 254 (7th Cir.1986), the flood gates were not opened here.

█ In order to make a successful "flood" argument under Rule 403, the defendant must show that, when considered in light of the other specific acts evidence introduced up to the point in the trial when the evidence at issue was admitted, the probative value of the challenged evidence was substantially outweighed by the danger of its prejudicial effect and the district court abused its discretion in not making that finding. Smith cannot make that showing.

█ Considering Hayden's testimony in the context of the other specific acts evidence (the 1991 copper theft), her testimony was not duplicative so as to be redundant and of minimal probative value. The evidence of Smith's truck theft in 1991 was probative of Smith's intent to steal the truck and its cargo from Born's Transfer. However, that was evidence of only one, isolated theft. Hayden testified that Smith had essentially admitted to her that he had stolen other trucks and their cargos prior to the 1991 copper theft. Her testimony was therefore material to the government's proof of intent. Because Smith fails to advance any other argument for why Hayden's testimony should have been excluded, we find the district court did not abuse its discretion in admitting that testimony.

## C

Finally, Smith argues that the district court erred in allowing the government to cross-examine him under FED. R. EVID. 608(b) regarding three prior truck-related thefts.

█ We review a district judge's decision to allow cross-examination under FED. R. EVID. 608(b) for an abuse of discretion. *United States v. Chevalier*, 1 F.3d 581, 583 (7th Cir.1993). We note that Smith did not object in a timely manner to the allegedly improper questions; he objected for the first time at the close of all the evidence. Consequently, he has forfeited his objection, and we will review only for plain error. *United States v. Olano*, 507 U.S. 725, 730–34, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993).

█ Smith briefly raises several arguments for the proposition that the district court erred in allowing the government to cross-examine him regarding the three prior thefts. Only two of his arguments merit our attention. Smith's first argument, that inquiry into the thefts was not permissible under Rule 608(b) because the thefts were not probative of his truthfulness or untruthfulness, is simply without merit. Prior acts of theft or receipt of stolen property are, like acts of fraud or deceit, probative of a witness's truthfulness or untruthfulness under Rule 608(b). *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir.1990) (en banc). When Smith took the stand and testified on his own behalf, he put his credibility in issue, and therefore the government's attack on his credibility under Rule 608(b) was proper.

█ Smith's second argument, that inquiry into the thefts was not permissible under Rule 608(b) because he had not been charged or convicted of those thefts, is also baseless. Smith need not have been convicted of the thefts in order for them to be admissible under Rule 608(b); the plain language of the rule allows for cross-examination of matters "other than conviction of crime." FED. R. EVID. 608(b). Consequently, the district court did not commit plain error in allowing Smith to be cross-examined regarding the three prior thefts.

For the foregoing reasons, William R. Smith, Jr.'s conviction is AFFIRMED.