Jack R. PREWITT, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 95–3125.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1996.

Decided May 3, 1996.

Patrick A. Tuite (argued), Arnstein & Lehr, Chicago, IL, for Jack Prewitt.

Christina McKee (argued), Office of U.S. Atty., Indianapolis, IN, for U.S.

Before CUMMINGS, CUDAHY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Jack Prewitt, a convicted insurance-scam artist, appeals from the denial of his habeas corpus challenge to his federal sentence for mail fraud. He asserts among other things that he received ineffective assistance of counsel because his attorney failed to argue for the application of a sentencing guideline provision. Because the provision under which Prewitt seeks a reduction in his sen-

tence does not apply to him, and his other arguments are not well-founded, we affirm his sentence.

## I.

In the early 1980's Jack Prewitt and two other men concocted a scheme to sell stock in a corporation whose only assets were the investors' own funds. Approximately 140 victims invested over $2 million in the bogus company. While Prewitt realized $400,000 in gains, the victims lost all the money they invested. In a second scheme Prewitt convinced investors to cash in their existing life insurance policies and provide the cash to him on his promises that he would obtain better life insurance policies for them. Prewitt pocketed the money instead of paying the premiums and the new policies lapsed for non-payment, leaving the victims with no insurance and no cash value in their policies. This plot defrauded investors of $61,000.

In 1988 authorities in the Northern District of Indiana caught up to Prewitt, arrested him, and charged him with mail fraud and filing a false tax return in separate indictments for the separate schemes. He pleaded guilty to the charges pursuant to a plea agreement. The Northern District court sentenced Prewitt under pre-Guidelines law to concurrent prison terms of three years on the mail fraud counts and three years probation for filing a false tax return. He was also ordered to make restitution of $526,500. He spent just over two years in prison for these crimes.

From late 1989 through mid–1990, while released on bond pending the resolution of the Northern District charges, Prewitt and two different men perpetrated one more scheme to defraud thirteen victims of over $300,000 by falsely representing the investment potential of Sterling American Financial Group, Inc., another sham company. In October 1992—one week before his release from prison on the Northern District convictions—a grand jury sitting in the Southern District of Indiana indicted Prewitt (along with his codefendants) on five counts of mail

fraud for the Sterling scheme.[1] A jury convicted him of these charges. The Southern District court sentenced Prewitt under the 1992 Sentencing Guidelines to 27 months imprisonment and three years supervised release.

Prewitt appealed this conviction arguing that he was charged with the same conduct in the Northern and Southern Districts of Indiana. This court affirmed Prewitt's Southern District conviction. *United States v. Prewitt*, 34 F.3d 436 (7th Cir.1994). We concluded that the plea agreement which resolved the two indictments in the Northern District did not preclude the U.S. Attorney for the Southern District from charging Prewitt with fraud for his 1989-90 scheme while out on bond because the indictment involved crimes separate and distinct from those in the Northern District prosecution. *Id.* at 440–41.

Prewitt later moved the Southern District court to declare his sentence concurrent with the Northern District sentence. He alleged the government delayed prosecuting him in the Southern District to deny him the benefit of United States Sentencing Guideline § 5G1.3, which governs the sentencing of a defendant who is convicted of a crime while subject to an undischarged term of imprisonment for a previous conviction. Prewitt sought application of § 5G1.3(c) which provides in part:

> [T]he sentence for the instant offense shall be imposed to run consecutively to the prior *undischarged term of imprisonment* to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

(Emphasis supplied.) The Southern District denied the motion stating that it lacked authority to modify Prewitt's sentence.

After he received new counsel Prewitt moved to vacate the Southern District sentence pursuant to 28 U.S.C. § 2255. He argued that but for the government's delay in indicting him in the Southern District, he still would have been in prison under his

---

1. One month before he was sentenced in the Northern District of Indiana the U.S. Attorney for that district had advised Prewitt that the U.S. Attorney for the Southern District of Indiana was investigating him for conduct similar to that charged in the second indictment.

Northern District sentence when he was sentenced in the Southern District, entitling him to the benefits of § 5G1.3(c) and (he asserts) a shorter sentence. The Southern District court denied Prewitt's petition reasoning that § 5G1.3(c) did not apply and that misapplication of a Sentencing Guideline was not an appropriate basis for relief under § 2255.

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 2255 and we entertain this appeal pursuant to 28 U.S.C. § 2253. We review *de novo* the district court's denial of a § 2255 motion. *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir.1996).

## II.

Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. *Brecht v. Abrahamson,* 507 U.S. 619, 633–34, 113 S.Ct. 1710, 1719–20, 123 L.Ed.2d 353 (1993). To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. *Theodorou v. United States,* 887 F.2d 1336, 1338 n. 2 (7th Cir.1989).

Prewitt starts far behind in his quest for relief under § 2255 because in the direct appeal of his Southern District conviction he failed to argue that § 5G1.3(c) applied to him. A § 2255 motion is not a substitute for direct appeal. *Theodorou,* 887 F.2d at 1339. As the district court noted, a habeas corpus petition is rarely if ever the proper vehicle by which to challenge the application of a Sentencing Guideline provision where the sentence has become final and the petitioner did not directly appeal the issue. *Scott v. United States,* 997 F.2d 340, 342 (7th Cir.1993). In *Scott,* we postulated a scenario of "a district court's refusal to implement a provision of the Guidelines designed for the defendant's benefit, coupled with 'cause' [such as ineffective assistance of counsel] for not taking a direct appeal." *Id.* at 343 (citation omitted). Prewitt attempts to fit into this rare exception.

An issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice. *Reed v. Farley,* —— U.S. ——, ——, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977)); *Dawson v. United States,* 77 F.3d 180, 183 (7th Cir.1996); *McCleese,* 75 F.3d at 1177–78. Prewitt does not assert that he falls into the "miscarriage of justice" exception. Rather, he claims that "good cause" exists to overcome his procedural default because his attorney rendered ineffective assistance by failing to raise § 5G1.3(c). Attached to his motion is an affidavit in which his former attorney avers she was unaware of § 5G1.3(c). Prewitt claims that his counsel's errors have resulted in actual prejudice to him because he received a stiffer sentence. Because Prewitt had the same attorney at trial and on appeal, he has shown good cause for his failure to raise the ineffective assistance of counsel claim on direct appeal. *United States v. Hall,* 35 F.3d 310, 316 (7th Cir.1994) (citing *Guinan v. United States,* 6 F.3d 468, 471 (7th Cir.1993)). Our analysis consequently focuses on the issue of prejudice. Unless Prewitt can convince us that he suffered actual prejudice by ineffective assistance of his counsel, he has procedurally defaulted and his § 2255 petition must be denied.

### A. Ineffective Assistance of Counsel

#### 1. Inapplicability of § 5G1.3(c).

To show ineffective assistance of counsel, Prewitt must show that (1) his attorney's representation was deficient and that (2) this deficient performance so prejudiced his defense that the resulting proceedings against him were fundamentally unfair and unreliable. *United States v. Kellum,* 42 F.3d 1087, 1094 (7th Cir.1994) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 368–71, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) and *Strickland v. Washington,* 466 U.S. 668, 687, 104

S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Prewitt asserts his trial counsel ineffectively represented him because she failed to argue that § 5G1.3(c) applied to his sentence. He argues that although at the Southern District sentencing he had been discharged from *prison* on the Northern District charges, his Northern District *sentence* had not yet ended because he was still on probation for the false tax return crime. Prewitt thus concludes he falls into the definition in § 5G1.3(c) of "undischarged term of imprisonment." He contends that if the sentencing court had used that guideline his sentence would have been much shorter because, when considered in conjunction with the 36–month sentence he had already received from the Northern District court, only a few more months were required to reach a "reasonable incremental penalty." [2]

■■■■ Section "5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Witte v. United States,* —— U.S. ——, —— – ——, 115 S.Ct. 2199, 2208–09, 132 L.Ed.2d 351 (1995). "[It] is designed to reduce disparities in punishment" by "evening out punishment for similar offenses." *United States v. Phipps,* 68 F.3d 159, 161, 163 (7th Cir.1995). Properly applied, § 5G1.3 approximates the total punishment that would have been imposed had all the offenses been federal offenses for which sentences were being imposed at the same time. U.S.S.G. § 5G1.3, comment (n. 3).

In *Phipps* this court considered whether part of a Wisconsin state sentence which mandated home detention constituted an "un-

discharged term of imprisonment" within the meaning of § 5G1.3(b). *Id.* at 161. We ruled that although § 5G1.3 was not a model of clarity,[3] federal, not state law, supplied the definition of an "undischarged term of imprisonment." *Id.* at 161.[4] We noted in *Phipps* how "imprisonment" is used throughout the Guidelines to denote time in a penal institution—"institutional time." *Id.* at 162–63. Accordingly, we concluded that "home detention" imposed on the defendant as part of a Wisconsin state conviction did not constitute a "term of imprisonment" for purposes of § 5G1.3(b).

The reasoning of *Phipps* and the Guidelines' definition of "imprisonment" lead us to the same conclusion in this case. Prewitt was released from prison for the Northern District mail fraud charges on November 6, 1992. He was on probation for the Northern District false tax return conviction when the Southern District court sentenced him on August 27, 1993.[5] Thus, Prewitt was not imprisoned-incarcerated in a penal institution—when he was sentenced by the Southern District court. Therefore, he was not subject to an "undischarged term of imprisonment" and could not invoke § 5G1.3.

This conclusion is buttressed by the fact that Prewitt was on probation when the Southern District court sentenced him. We have defined probation as an "alternative to incarceration." *United States v. Sanchez–Estrada,* 62 F.3d 981, 994 (7th Cir.1995). The 1992 Sentencing Guidelines define it the same way. *See* U.S.S.G. § 5B1.1, Introductory Comment. Reading the applicable guideline provisions for what they say, as we

---

**2.** Application Note 3 to § 5G1.3(c) explains this concept:

> To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense which results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed ... had all the offenses been federal offenses for which sentences were being imposed at the same time.

**3.** The First Circuit agrees with this assessment. *United States v. Gondek,* 65 F.3d 1, 2 (1st Cir. 1995).

**4.** Thus, in *Phipps* we distinguished *United States v. French,* 46 F.3d 710, 717 (8th Cir.1995), which ruled that under South Dakota law parole was an "undischarged term of imprisonment" within the meaning of § 5G1.3(b) because South Dakota law provided that parolees are at all times considered to be confined.

**5.** In his briefs Prewitt incorrectly states that he was on supervised release when sentenced in the Southern District. His presentence report shows he was on probation at that time. This comports with the fact that Prewitt was sentenced in the Northern District under pre-Guidelines law, under which he would receive probation.

must,[6] "probation" is different from imprisonment. Section 5G1.3(c) thus did not apply to Prewitt when he was sentenced in the Southern District. This conclusion comports with that reached by this court in passing. *Cf. United States v. Brassell*, 49 F.3d 274, 279 (7th Cir.1995) (prior state sentence which had expired at time of federal sentencing not considered "undischarged term of imprisonment" under § 5G1.3(c)). Other courts have reached the same conclusion on similar questions. *See, e.g., United States v. Bernard*, 48 F.3d 427, 431–32 (9th Cir.1995) ("supervised release" not an "undischarged term of imprisonment" under § 5G1.3(a)); *United States v. Ogg*, 992 F.2d 265, 266 (10th Cir. 1993) (state sentence completed two months before defendant charged in federal indictment rendered inapplicable § 5G1.3(b)). For these reasons, § 5G1.3(c) did not apply to Prewitt, and his counsel was not ineffective for failing to raise it at sentencing.

*2. Competence does not require arguing for the application of § 5G1.3(c).*

Prewitt contends that had trial counsel been aware of § 5G1.3, and made him aware of it, he could have pleaded guilty and been sentenced much sooner on the Southern District charges rather than go to trial. He then might have received little if any incremental increase in his previously imposed three-year sentence. Because trial counsel was not aware of the guideline provision, as evidenced by her affidavit, Prewitt contends he never had that opportunity, and thus was deprived of effective counsel.

Ineffectiveness aside for the moment, suppose counsel had informed Prewitt of § 5G1.3(c) and he decided to plead guilty sooner. Even if § 5G1.3(c) applied to Prewitt, had Prewitt pleaded guilty while in prison on the Northern District charges and the Southern District court applied § 5G1.3(c), his sentence would not necessarily have been shorter. As the government's brief demonstrates, calculating Prewitt's Northern and Southern District crimes together under the 1992 Guidelines (under which the Southern District court sentenced Prewitt) results in a

sentencing range of 63 to 78 months. Subtracting the 36–month Northern District non-Guidelines sentence, Prewitt was sentenced to the exact amount of time in prison left at the bottom of the guideline range: 27 months. If Prewitt had pleaded guilty while imprisoned for the Northern District crimes, the Southern District trial judge still could have sentenced him to the same 27 months of incarceration.

That being said, we examine Prewitt's ineffective assistance claim. The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). It does not guarantee the right to counsel who knows and exploits every tactical advantage—unrelated to guilt or innocence—on his client's behalf. The speculative use of a potential legal loophole is not a constitutional right. See *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982) (Constitution guarantees criminal defendants only fair trial and competent counsel, not that every conceivable claim will be raised).

Considering the straightforward wording of § 5G1.3(c)—"undischarged term of *imprisonment*"—we cannot say that competent counsel would argue for its application to Prewitt's case. As Prewitt recognizes, even the experienced trial judge did not mention this guideline provision at sentencing (when Prewitt was already out on probation). Prewitt's counsel was not ineffective for failing to claim that the government had intentionally delayed the indictment for the purpose of rendering § 5G1.3 inapplicable. As pointed out *infra*, II.B.1, the record contains no evidence of such delay. Although Prewitt may wish that his trial counsel had claimed this guideline provision applied, failure to do so is not ineffective assistance. Even if two incarcerations overlap, a district court still has the discretion to apply this guideline provision. U.S.S.G. § 5G1.3, comment (n. 3); *see also Sorensen*, 58 F.3d at 1159 (court need not follow § 5G1.3 in all cases and

---

**6.** See *Williams v. United States*, 503 U.S. 193, 200, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341

(1992); *United States v. Sorensen*, 58 F.3d 1154, 1158 (7th Cir.1995).

retains discretion to determine § 5G1.3 does not yield appropriate incremental punishment). This discretion to sentence Prewitt means that only the *possibility* existed he would receive a concurrent sentence. With no wrongful delay in the second prosecution, that possibility was remote. A mere possibility of prejudice does not qualify as *actual* prejudice. *See, e.g., United States v. Smith,* 80 F.3d 1188, 1193 (district court's discretion to sentence defendant under 1994 version of U.S.S.G. § 5G1.3(c) means claim for concurrent sentences is insufficient to qualify as actual prejudice on due process claim for pre-indictment delay).

Prewitt has not demonstrated ineffective assistance of counsel prejudiced him. He likely would have received a very similar sentence with an early plea even if § 5G1.3(c) applied. Also, with the timing of the actual sentencing any beneficial application of § 5G1.3(c) was highly unlikely. Prewitt has procedurally defaulted on this argument that § 5G1.3(c) should apply to him, and this issue is barred from collateral review.

*B. Pre–Indictment Delay*

■■■ In addition to his ineffective assistance of counsel claim, Prewitt asserts the government intentionally delayed seeking an indictment against him to deprive him of the possible benefit of § 5G1.3(c). If Prewitt could get no benefit from § 5G1.3 because he was not indicted on the second charge until his first sentence ended, and the possibility of concurrent sentences was lost because of the timing of the prosecution's indictment, then, Prewitt argues, the prosecution must have intentionally delayed indictment in the Southern District of Indiana. He asserts there should be a hearing on the question at least.

*1. Request for evidentiary hearing.*

■■■■ An evidentiary hearing on a § 2255 motion is not mandatory. *Daniels v. United States,* 54 F.3d 290, 293 (7th Cir. 1995). "[I]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Barry v. United States,* 528 F.2d 1094, 1101 (7th Cir.) (footnotes omitted), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir.1989) (citing *United States ex rel. Edwards v. Warden,* 676 F.2d 254, 256 n. 3 (7th Cir.1982)).

Prewitt offers only conclusory allegations of prejudice in support of his claim of pre-indictment delay to deprive him of the possible benefit of a partially concurrent sentence under § 5G1.3. He notes the amount of time the investigation took and concludes that the government intentionally delayed, but offers no detailed and specific facts in support of this conclusion.

Prewitt's lack of submission must be contrasted with the facts as the government has relayed them. The prosecutors completed their investigation of the Sterling scheme in May 1992. A Southern District of Indiana grand jury indicted Prewitt in October 1992. Although the prosecutors completed interviews of Prewitt's victims in spring 1990, from then until indictment the investigation continued by securing and analyzing bank and trust records and locating assets. This decision to complete the investigation before presenting the case to the grand jury does not evidence intentional delay. Further, the grand jury indicted Prewitt less than two and one-half years after the Sterling scheme ended, less than halfway through the five-year applicable statute of limitations of 18 U.S.C. § 3282. *See United States v. Baker,* 40 F.3d 154, 157–58 (7th Cir.1994) (although statute of limitations does not fully define defendant's rights with respect to pre-indictment events, it does provide obvious legislative benchmark against potential prejudice flowing from government's delay), *cert. denied,* —— U.S. ——, 115 S.Ct. 1383, 131 L.Ed.2d 237 (1995).

■■■ Prewitt has provided only allegations, rather than proof, of intentional delay. Suppositions about memoranda between investigators and prosecutors concerning the timing of the second indictment cannot carry

the day, as conclusory allegations do not suffice. *United States v. Canoy,* 38 F.3d 893, 902 (7th Cir.1994). The district court has discretion to determine whether a habeas corpus petitioner is entitled to an evidentiary hearing. *United States v. Taglia,* 922 F.2d 413, 419 (7th Cir.), *cert. denied sub nom., McDonnell v. United States,* 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). Considering this record, we cannot say the district court abused its discretion by not acceding to Prewitt's request for a hearing.

### 2. Pre-indictment delay.

■■■■ "[A] district court may not dismiss a § 2255 motion without an evidentiary hearing unless the record conclusively demonstrates that the defendant is entitled to no relief." *McCleese,* 75 F.3d at 1182 (citing *Dugan v. United States,* 18 F.3d 460, 464 (7th Cir.1994)). The record in this case conclusively demonstrates that Prewitt is entitled to no relief.

■■■■ We recently reiterated that a defendant must show "actual and substantial prejudice" to prevail on a claim of pre-indictment delay. *United States v. Smith,* 80 F.3d 1188, 1192 (7th Cir.1996) (citing *Canoy,* 38 F.3d at 901). "[I]t is not enough ... to offer some suggestion of speculative harm; rather, the defendant must present concrete evidence showing material harm." *United States v. Anagnostou,* 974 F.2d 939, 941 (7th Cir.), *cert. denied,* 115 S.Ct. 174 (1994). The defendant's "allegations of prejudice must be specific, concrete and supported by the evidence—vague, speculative, or conclusory allegations will not suffice." *United States v. Fuesting,* 845 F.2d 664, 669 (7th Cir.1988). This is an "exacting" obligation. *Canoy,* 38 F.3d at 902.

As demonstrated above, Prewitt cannot show that § 5G1.3(c) would have resulted in a shorter sentence for him. Because there is only a *possibility* that Prewitt would have received the benefit of that guideline provision, he did not suffer *actual* and substantial prejudice supported by concrete and specific facts. His claim of preindictment delay thus fails.

### C. Ex Post Facto Clause

■■■■ Prewitt also claims that his sentence violates the *ex post facto* clause of Article I, § 9 of the U.S. Constitution.

The Southern District court sentenced Prewitt under the 1992 Guidelines which were in effect on the sentencing date. *See Brassell,* 49 F.3d at 277 (Guidelines in effect on date of sentencing apply). Prewitt claims that had the 1990 Guidelines in effect when he committed the crimes been applied, he would have received a less severe sentence because the 1990 version contained the words "*unexpired* term of imprisonment" instead of "*undischarged* term of imprisonment" in the 1992 version. Prewitt asserts that while he may have been "discharged from [Northern District] custody" at the Southern District sentencing, his Northern District sentence remained "unexpired" because he was on probation. He submits that the Guidelines calculations for his two cases result in a range of 33 to 41 months. Because he received a sentence of 36 months on the first case, he contends the sentence on his second conviction should be no longer than 5 months. Because his second sentence was for 27 months, he reasons that he has been the victim of retroactive application of amended Guidelines, and thus sentenced in violation of the *ex post facto* clause.

■■■■ Prewitt forfeited this claim by failing to raise it in the district court. *United States v. Penny,* 60 F.3d 1257, 1261 (7th Cir.1995) (citing *United States v. Olano,* 507 U.S. 725, 732–33, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993)), *cert. denied,* —— U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). This court reviews such a forfeited claim only for plain error. *Penny,* 60 F.3d at 1261.

Prewitt cites no legal authority to support his position that the 1990 Guidelines would have been of greater benefit to him than the 1992 version. As we concluded above, his prison term—not his sentence—must have ended to gain the benefit of § 5G1.3(c). Prewitt looks only to the words "unexpired" and "undischarged" and notes that at the time of his second sentencing, the first sentence had not "expired." But we cannot ignore the terms following these words. Section 5G1.3(c) read in its entirety demon-

strates that the "term of imprisonment," not the sentence, must be unexpired or undischarged to gain the benefit of that Guideline provision. Either way, his term of imprisonment had "expired" or he had been "discharged" from prison such that § 5G1.3(c) no longer applied.

Because Prewitt cannot show that his 1992 sentence would be less severe under the 1990 Guidelines, he cannot show the district court committed plain error by sentencing him under the 1992 Guidelines. He does not assert or show that he is actually innocent. Accordingly, the plain error exception does not apply, and his *ex post facto* argument fails.

### III.

The district court sentenced Prewitt legally. His counsel did not render ineffective assistance because U.S.S.G. § 5G1.3(c) does not apply to Prewitt. He received effective assistance even though his counsel did not argue for its application on these facts. The district court was well within its discretion to deny Prewitt an evidentiary hearing on the question of pre-indictment delay, for he has offered no evidence of it. Finally, the district court did not commit plain error by sentencing him under the 1992 Guidelines. Accordingly, the district court's denial of Prewitt's § 2255 motion is

AFFIRMED.

CUDAHY, Circuit Judge, concurring in the judgment:

It seems to me that the application of guideline 5G1.3 to Prewitt's sentence is controlled by *United States v. Smith,* 80 F.3d 1188 (7th Cir.1996). That case holds that, "[t]he district court's discretion to sentence [the defendant] either concurrently or consecutively translates into ... only the possibility of receiving a concurrent sentence." Hence, pre-indictment delay like that before us does not qualify as actual prejudice. It is therefore unnecessary to spin out the distinctions drawn in *United States v. Phipps,* 68 F.3d 159, 161–63 (7th Cir.1995). *Phipps* found that a "term of imprisonment" does not include home detention, but it carefully left undecided the meaning of "undischarged

term of imprisonment." Whether being placed on parole "discharges" a term of imprisonment is not a question we have to decide now and I would not decide it.

Given the ruling in *Smith,* the district court did not abuse its broad discretion by refusing to hold a hearing on the issue of pre-indictment delay. I also agree that "unexpired" and "undischarged" have no obviously different meanings in the present context.