1999 ME 97

**STATE of Maine**

v.

**Ali Hussain ALMURSHIDY.**

Supreme Judicial Court of Maine.

Argued May 4, 1999.
Decided June 25, 1999.

**282**

Stephanie Anderson, District Attorney, Julia Sheridan (orally), Assistant District Attorney, Portland, for the State.

William Maselli (orally), Auburn, for the Defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Ali Almurshidy appeals from a judgment of conviction of gross sexual assault (Class A), unlawful sexual contact (Class C), and furnishing liquor to a minor (Class D) entered after a jury trial in the Superior Court (Cumberland County, *Crowley, J.*). On appeal, Almurshidy challenges the sufficiency of the evidence on the sexual assault counts and three evidentiary rulings. Because we agree with Al-murshidy that his mug shot should not have been admitted in evidence, we vacate the judgment. Almurshidy also appeals the judgment revoking his probation, which appeal we dismiss because he has not properly pursued it.

[¶ 2] The indictment against Almurshidy alleges that the offenses occurred on August 9, 1997, in Cumberland County. Specifically, he was charged with engaging in a sexual act with the named victim, by direct physical contact between his genitals and her genitals, and she submitted as a result of compulsion. *See* 17–A M.R.S.A. § 253(1)(A) (Supp.1998). He was also charged with intentionally subjecting the victim to sexual contact to which she submitted as a result of compulsion. *See* 17–A M.R.S.A. § 255(1)(H) (Supp.1998). He was further charged with knowingly furnishing liquor to the victim, who was a minor. *See* 17–A M.R.S.A. § 208(A) (Supp.1998).

[¶ 3] The jury would have been justified in finding the following facts: On the afternoon of August 9, 1997, in downtown Portland, Almurshidy saw the victim, a seventeen-year-old girl whom he had met the night before at a friend's apartment. The victim described herself at trial as a "street kid," meaning a young person who is homeless, stays on the streets during the day and goes to a shelter at night. Almurshidy asked the victim if she wanted to get drunk again, and she said yes. She then accompanied Almurshidy and his friend Al–Shewaily in Almurshidy's car to Sebago. On the way Almurshidy stopped to buy beer. They stopped at a clearing in the woods in Sebago, and Al–Shewaily and the victim exited the car. Almurshidy left in the car. The victim began drinking from a can of beer, and Al–Shewaily asked her to have sex with him. He took a pink condom wrapper out of his pocket. The victim said no, and Al–Shewaily apologized, saying he would not ask her again.

[¶ 4] Almurshidy returned, and the two men conversed in a language the victim

could not understand. Al–Shewaily took a walk in the woods, leaving Almurshidy alone with the victim. Almurshidy told the victim that he wanted to marry her, and he repeatedly asked her to have sex with him. She repeatedly refused. While she was up against a tree, and her pants were down, Almurshidy touched her genitals with his hand. She testified that she did not remember who pulled her pants down. She told Almurshidy to stop and pushed him away. She pulled her pants up, sat on a rock and drank more beer. Almurshidy exposed his penis, and she briefly touched it. He put her down on the ground and pulled her pants off. Although she told him not to, he got on top of her and touched her vagina with his penis. She testified that "it hurt like hell." She told him to get off and unsuccessfully tried to push him off. She poured beer on him, and he got up.

[¶ 5] The victim pulled up her pants and ran to the nearest building where she asked to use the phone. Her request was denied, and she ran to a restaurant where a waitress saw that she was very distraught and frightened. The victim did not tell anyone at the restaurant what had happened to her. A restaurant employee called the sheriff's office, and a deputy arrived. He saw that she was crying, and he gave her a ride back to Portland, to the shelter where she had been staying. She did not tell the deputy that she had been assaulted or raped. She told him she had been with two men who left her in the woods. Although she knew Almurshidy's name, she did not tell the deputy.

[¶ 6] At the shelter, staff members saw that she was nervous, timid and avoided people. She left the shelter and was found outside on the sidewalk curled up in a ball. Later when a staff member asked her if she had been raped, she nodded her head affirmatively. Staff members asked her

not to shower, but she did so anyway. There was no medical or rape examination of the victim.

[¶ 7] Two days later the victim was interviewed by a sergeant from the sheriff's office. She showed the sergeant the location of the clearing in Sebago where he found a condom wrapper, beer cans and other items. The sergeant showed the victim an array of six photographs, each of a different male, and she identified Almurshidy as her assailant.

[¶ 8] A jury found Almurshidy guilty of gross sexual assault, unlawful sexual contact, and furnishing liquor to a minor.[1] The trial court also found Almurshidy to have violated the terms of probation that had been imposed in 1996 on a conviction for criminal threatening with a dangerous weapon. The basis for the probation violation was the finding by the trial court that Almurshidy engaged in new criminal conduct, specifically these three offenses. *See* 17–A M.R.S.A. § 1204(1) (Supp.1998). The Superior Court revoked his probation, and he was ordered to serve the time remaining on his sentence.

[¶ 9] Almurshidy noticed an appeal of the probation violation, but he did not perfect the appeal. "In a probation revocation proceeding in the Superior Court, a person whose probation is revoked may not appeal as of right." 17–A M.R.S.A. § 1207(2) (Supp.1998). The manner and conditions of the appeal are provided by rule. *See id.* Almurshidy did not follow the procedures set forth in M.R.Crim. P. 37F, and no certificate of probable cause was issued for the appeal. Therefore, the appeal of the probation revocation must be dismissed. *See* M.R.Crim. P. 37F(j)(2).

## I. SUFFICIENT EVIDENCE ON THE ISSUE OF COMPULSION

[¶ 10] The State charged that the victim submitted to Almurshidy as a result of

---

1. He was subsequently sentenced to twelve years imprisonment on the gross sexual assault charge, with all but eight years suspended and four years of probation. Concurrent sentences of five years and 364 days on the

other two offenses were imposed. The sentences of imprisonment were ordered to be served consecutively to Almurshidy's sentence on a probation revocation of one year and eleven months.

compulsion in both the unlawful sexual contact, 17–A M.R.S.A. § 255(1)(H), and gross sexual assault, *id.* § 253(1)(A).

> "Compulsion" means the use of physical force, a threat to use physical force or a combination thereof that makes a person unable to physically repel the actor or produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being.
>
> "Compulsion" as defined in this paragraph places no duty on the victim to resist the actor.

*Id.* § 251(E) (Supp.1998).

**■** [¶ 11] On the gross sexual assault, the victim testified that Almurshidy put her on the ground, got on top of her, and she was unable to repel him. Viewing the evidence in the light most favorable to the State, the jury rationally could have found that the victim submitted to the gross sexual assault as a result of compulsion. *See State v. Reynolds,* 604 A.2d 911, 913 (Me.1992) (victim's testimony that defendants held her down and she pushed them away and begged them to stop sufficient to establish compulsion).

**■** [¶ 12] While the evidence of compulsion on the unlawful sexual contact is not as strong as the evidence on the gross sexual assault, the jury rationally could have found that the victim submitted to the contact as a result of compulsion. The victim testified that she was up against a tree while Almurshidy touched her genitals with his hand. She testified that she was scared and that Almurshidy touched her even though she asked him not to. He did not stop until she pushed him, and he

let go of her for a second. She pulled up her pants and sat down on a rock. From the victim's testimony, the jury could have reasonably inferred that Almurshidy held her against the tree or pushed her against it while he fondled her and for a brief period of time she was unable to get away from him. Furthermore, the fact that she was unable to repel him when he was on top of her shortly after the tree incident is probative of her inability to repel the unlawful sexual contact.

## II. EVIDENCE OF THE PHOTO ARRAY

[¶ 13] The sergeant from the sheriff's department testified that he showed the victim an array of photographs from which she identified Almurshidy. The victim testified that she saw the photo array and picked Almurshidy's photo from it. The victim also made an in-court identification of Almurshidy. Although identification was not a contested issue, the State offered the photo array in evidence. Almurshidy objected on the grounds that identification had been already established and that the photos were unduly prejudicial because they were booking and arrest photos, but the photo array was admitted. The exhibit consists of six black and white photos, each of a different male facing forward. Each photo shows a height chart behind the head. The photos are clearly mug shots. The six photos are taped inside a manila folder with six holes cut in it.[2]

**■** [¶ 14] In a similar case, we held it was an abuse of discretion to admit a photo array in evidence. *See State v. Robbins,* 666 A.2d 85, 87 (Me.1995). "The

---

**2.** Although the manila folder appears to have been taped so that it would not be opened, there is nothing in the record to indicate whether it was taped when it went to the jury and whether it was taped when it came back from the jury. At some point the tape was cut. The opened folder displays additional booking information for each of the six individuals, and six matching side-view photos are revealed. In Almurshidy's picture is a

sign reading "Almurshidy, A., ID No. 000000, Date 08/11/97. Cumberland County Sheriff's Office." Almurshidy did not make any objection relating to the inside of the folder or to what could be seen by the jurors if they opened the folder. Because there was no objection to the inside contents of the folder, we treat the exhibit as though the inside contents were not available to be viewed by the jurors.

fundamental reason why a 'mug shot type photograph' of a defendant may be inadmissible is that it tends to inform the jury that the defendant may have a prior criminal record, thereby reflecting unfavorably on [his] character." *Id.* (citing D.H. White, Annotation, *Admissibility, and Prejudicial Effect of Admission, of "Mug Shot," "Rogues' Gallery" Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial,* 30 A.L.R.3d 908 (1990 & Supp.1995)). In *Robbins* we cited a three-part test for the admissibility of such photos: "(1) the prosecution must show a demonstrable need to introduce the photograph; (2) the photograph, if shown to the jury, must not imply that the defendant has a prior criminal record; and (3) the introduction at trial must not draw particular attention to the source or implications of the photograph." *Id.* at 88 n. 7 (quoting *Stephenson v. State,* 606 A.2d 740, 741–41 (Del.1992)). The United States Court of Appeals for the First Circuit, which refers to the test as a "why, what and how" test, adopted the same test "because there is grave risk of prejudice in the introduction of photographs such as 'mugshots' . . . ." *United States v. Carrillo–Figueroa,* 34 F.3d 33, 40 (1st Cir.1994).

■ [¶ 15] The photo array in this case fails the first two criteria of the test. As to the "why" part of the test, there was no demonstrable need to introduce the array. Identification was not an issue at trial. The victim made an in-court identification based on her observation of Almurshidy on both August 8 and 9, and both she and the sergeant testified that she picked Almurshidy from the photo array. Almurshidy did not make an issue of identification. The record does not reveal any confusion, hesitation, or equivocation by the victim on the identification of Almurshidy. Contrary to the State's assertion at oral argument, the record does not reveal that Almurshidy's attorney tried to confuse the victim on cross-examination regarding the identification of Almurshidy.

[¶ 16] Regarding the "what" portion of the test, the photo of Almurshidy clearly shows a height chart behind him. Even though the additional booking information was concealed, the photo is what most of the public thinks of as a "mug shot." It "tend[s] to inform the jury that the defendant may have a prior criminal record." *Robbins,* 666 A.2d at 87.

■ [¶ 17] In addition to failing the three-part test, the admission of the photo array was an abuse of discretion under M.R. Evid. 403. Its negligible probative value was substantially outweighed by the danger of unfair prejudice, that is, "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *State v. Thurlow,* 1998 ME 139, ¶ 12, 712 A.2d 518, 522 (Lipez, J., concurring) (quoting *State v. Hurd,* 360 A.2d 525, 527 n. 5 (Me.1976)). The photo had an undue tendency to move the jury to convict Almurshidy on the improper basis of his criminal record. It should not have been admitted.

[¶ 18] The State argues that the error was harmless. We held the erroneous admission of the photo array in *Robbins* to be harmless, but on the questionable basis that there was overwhelming evidence supporting the identification of the defendant. *See* 666 A.2d at 88. That analysis was directly inconsistent with the expressed reason in *Robbins* for excluding a photo array: that is, a mug shot should be excluded because of what it implies about the defendant's character. *See id.* at 87.

■ [¶ 19] The proper question on harmless error is whether the photo's implication about Almurshidy's character might have affected the verdict. This is not a case in which a defendant's prior criminal record comes into evidence and, therefore, a mug shot does not tell the jurors something they did not learn from other evidence. The mug shot in this case was not merely cumulative evidence of Almurshidy's character because no other ev-

idence before the jury suggested that Almurshidy had a criminal record. By making Almurshidy appear to have a criminal record, the photo may have swayed the jury, making it more willing to believe the victim. The State's argument that the error is harmless because of the overwhelming evidence of identification only emphasizes the cumulative nature of the identification evidence and the lack of need for the photo. It says nothing about the "mug shot" nature of the photo and the likely inference that Almurshidy is a criminal.

[¶ 20] This is not a case in which the evidence of the defendant's guilt is overwhelming. There were no other witnesses to the assault. No rape examination of the victim was done, and there is no medical evidence of vaginal trauma or physical evidence such as semen or hair. It is not highly probable that the erroneous admission of the mug shot did not affect the jury verdict. Because the trial court erred in admitting the mug shot, we vacate the judgment.

## III. EVIDENCE OF PRIOR RAPES OF THE ALLEGED VICTIM

[¶ 21] Although we vacate the judgment of conviction because of the admission into evidence of the mug shot, we discuss two other evidentiary issues raised on appeal because of the likelihood that the issues will reappear on retrial. *See State v. Murphy*, 496 A.2d 623, 632–33 (1985) (examination of claims of trial error promotes judicial economy when issues are likely to recur at retrial even though judgment is vacated on other grounds).

[¶ 22] Almurshidy sought to introduce the testimony of a shelter staff member that the victim told her that she had been raped three times previously. This disclosure was made by the victim to the staff member on August 8, the night before the victim accompanied Almurshidy to Sebago. On August 9, after the victim returned from Sebago, the staff member found her on the fire escape. The staff member asked the victim if everything was okay, and the victim said, "this was the fourth time." The staff member, recalling their conversation of the previous day, asked the victim if she had been raped that night, and the victim nodded affirmatively. The trial court excluded the testimony of the prior rapes and the testimony that it was the fourth time.

[¶ 23] Almurshidy argued during a hearing on his motion in limine that evidence of three prior rapes in a short period of time was "inherently incredible," and the inference to be drawn from such testimony is that the victim could not be believed. The State argued that the testimony of three prior rapes is foreclosed by M.R. Evid. 412. Almurshidy contended that Rule 412 prohibits evidence about the past sexual conduct of a victim, but that rape is violent behavior, not sexual behavior.[3]

■ [¶ 24] There is conflicting authority on whether Rule 412 applies to prior nonconsensual sex, but the majority rule is that it applies. *See* 23 WRIGHT & GRAHAM, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5384, at 545 n. 55 (1980 & Pamph.1999). That interpretation is bolstered by the comment to M.R. Evid. 412, which states that " 'Sexual behavior' is not specifically defined in the rule, but would include the behavior described by [former] 17–A M.R.S.A. § 251 (B, C, and D)," ' which defined "sexual intercourse," "sexual act," and "sexual contact." M.R. Evid. 412 advisory committee's note, FIELD & MURRAY,

---

3. Almurshidy also argued that evidence of the prior rapes should have been admitted, pursuant to M.R. Evid. 106, to complete the staff member's testimony concerning the victim's report of the rape by Almurshidy. Rule 106 is inapplicable because "[i]t applies to writings and recorded statements but not to conversations." M.R. Evid. 106, advisers' note, FIELD & MURRAY, MAINE EVIDENCE 45 (4th ed.1997). Even if an analogous rule applies to conversations, *see State v. Ryder*, 348 A.2d 1, 4 (Me. 1975), otherwise inadmissible evidence is not admitted simply to complete a written or oral statement. *See* FIELD & MURRAY § 106.1, at 46.

MAINE EVIDENCE 177 (4th ed.1997). We concur with the majority rule that Rule 412 applies to prior rapes of the victim.

[¶ 25] Evidence otherwise barred by Rule 412 may be admissible when it is a statement by the victim about past sexual conduct and is relevant as impeachment. *See id.* Impeachment evidence of specific instances of the conduct of a witness is permitted by M.R. Evid. 608(b)(1) on the cross-examination of the witness when the instances of conduct are probative of truthfulness or untruthfulness and concern the witness' character for truthfulness or untruthfulness. The fact that a person has been raped in the past, even raped three times in a short period of time, is not probative of truthfulness or untruthfulness.[4] The trial court was justified in finding that evidence of three prior rapes was not relevant to whether the victim was raped on August 9, nor was it relevant to the victim's credibility.[5] The trial court did not clearly err or abuse its discretion in disallowing the evidence of the prior rapes.

## IV. EVIDENCE OF INVOLVEMENT BY WITNESS IN BURGLARY AND THEFT

[¶ 26] During the cross-examination of the victim, Almurshidy's counsel requested the court's permission to ask the victim about her role in a burglary and theft of drugs from a veterinarian's office two months before the August 9 incident. Almurshidy's counsel properly alerted the court at sidebar to the question he was about to ask. Almurshidy had information that the victim had admitted her involvement in the burglary and theft to a caseworker. The State objected to the proposed questioning on several grounds, and the objection was sustained. Because we are vacating the judgment on other grounds, we find it unnecessary to determine whether the proposed question about the victim's involvement in a burglary and theft should have been allowed. Given the likelihood that this issue will be presented on retrial and for the guidance of counsel, we briefly discuss the State's objections to the question and the trial court's ruling.

[¶ 27] There is no merit to the State's first objection which was that the proposed question could not be permitted because the victim was not charged or convicted of burglary and theft. The lack of a conviction makes M.R. Evid. 609 inapplicable, but a charge or conviction is not a prerequisite for the introduction of specific acts pursuant to Rule 608(b). *See United States v. Smith,* 80 F.3d 1188, 1193 (7th Cir.1996).

[¶ 28] The State also objected on the grounds that evidence of specific acts is not admissible unless evidence of reputation for truthfulness is admitted on the direct examination of the witness. The trial court agreed and sustained the objection on this basis. The plain wording of Rule 608(b)(1), however, does not require

---

4. A prior false accusation of rape may be admissible under Rule 608(b)(1) if the witness admits the falsity of the accusation, but Almurshidy did not suggest that the victim's accusations were false. Even if he had proof that they were false, pursuant to Rule 608(b)(1), extrinsic evidence to prove the falsity of the accusation is not admissible. *See State v. Ellsworth,* 136 N.H. 115, 613 A.2d 473, 474 (1992) (trial court did not abuse discretion in excluding prior false accusation of rape because extrinsic evidence not admissible to prove falsity).

5. Even if the trial court had found the prior rapes to be relevant evidence, it would not have abused its discretion in rejecting the evidence on the basis of M.R. Evid. 403. Rule 403 applies to the admission of evidence pursuant to Rule 608(b). *See Capul v. Fleet Bank,* 1997 ME 140, ¶ 12, 697 A.2d 66, 69–70. The court noted that evidence concerning the prior rapes was collateral, could be distracting and confusing to the jury, and would have prejudicial effect. In a similar case, we held the trial court did not abuse its discretion in preventing, pursuant to Rule 403, cross-examination of the victim regarding a prior rape allegation that the defendant claimed, but did not demonstrate, was false. *See State v. Steen,* 623 A.2d 146, 149–50 (Me.1993).

an attack on the truthful character of the witness as a prerequisite to cross-examining the witness on specific instances of the witness', own conduct. In objecting on this ground, the State may have been confusing Rule 608(a), which deals with reputation evidence, with 608(b)(1). Rule 608(a) allows evidence of the reputation of *truthful* character to be admitted only when the witness' character for truthfulness has been attacked. See FIELD & MURRAY § 608.3, at 268. Rule 608(b)(1), however, allows a witness to be cross-examined about specific instances of her own conduct even though no evidence of her character for truthfulness or untruthfulness has been introduced previously as long as the specific instances of conduct are probative of truthfulness or untruthfulness and concern the witness' character for the same.

[¶ 29] The State further objected to the question because the victim would have the right to claim her Fifth Amendment privilege if asked about the burglary and theft. On appeal the State also argues that Almurshidy's information about the victim's involvement in the burglary and theft was not sufficiently reliable. Both of these factors should be considered by a court in determining whether a witness can be questioned about prior specific acts.

6. For example, the conduct of falsifying testimony is more probative of whether someone has a truthful or untruthful character than violating a bail condition. See State v. Willette, 402 A.2d 476, 478 (Me.1979) (prior act of leaving state in violation of truthfulness or untruthfulness). We have not had the occasion to rule on whether burglary and theft are acts that are probative of truthfulness or untruthfulness, but we have held that they are crimes involving "dishonesty or false statement" for purposes of M.R. Evid. 609. See State v. Calor, 585 A.2d 1385, 1387 (Me.1991); see also United States v. Smith, 80 F.3d 1188, 1193 (7th Cir.1996).

7. At the time Almurshidy's counsel sought permission to question the victim about the burglary and theft, there was no explanation on the record as to the source of the information. Later, while the jury was deliberating, the court proceeded to hear the State's mo-

[¶ 30] Trial courts have wide discretion in determining whether the evidence sought to be admitted pursuant to Rule 608(b)(1) is relevant. See FIELD & MURRAY § 608.2, at 266. The appropriate exercise of that discretion requires an examination of several factors in order to determine how probative the offered evidence is of the witness' character for truthfulness or untruthfulness. See id. at 267; 28 WRIGHT & GOLD, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 6118, at 93–94 (1993). One of the factors to be considered is the importance of the witness to the case. Another factor is how probative of truthfulness or untruthfulness the bad acts are.[6] The reliability of the information that the bad acts in fact occurred is another factor.[7] Fishing expeditions into possible bad acts of the witness cannot be allowed, and the party seeking to inquire about specific instances of conduct should have a good faith belief that the conduct occurred and must be prepared to make a preliminary showing. WRIGHT & GOLD § 6118, at 96 n. 19 (1993 & Supp.1999).

[¶ 31] A court should also consider factors similar to those in a Rule 403 analysis, such as undue delay, including the delay that might be caused by a voir dire of the witness in the absence of the jury.[8] An-

tion for revocation of Almurshidy's probation. The parties had previously agreed that the evidence presented during the trial was to be considered by the court in the probation revocation proceeding. In addition, the parties stipulated to several facts for purposes of the probation revocation only. One of those stipulations was that the victim stated to a caseworker that she was an accomplice two months prior to August 9 in a burglary and theft of a veterinarian's office during which a certain drug was stolen.

8. If the court was inclined to allow the question about the burglary and theft a voir dire would be warranted because of the likelihood that the victim would invoke her Fifth Amendment privilege or at least want to speak with an attorney about whether she should invoke the privilege. We have said that when there is an indication that a witness will invoke the privilege, the witness should be questioned with the jury absent. See State v. Robbins,

other consideration is whether the evidence of specific acts is cumulative of other evidence probative to the issue of the witness' character for truthfulness or untruthfulness.

[¶ 32] This is not an exhaustive list of factors to be analyzed by the trial court in considering whether a witness can be questioned about specific instances of conduct, but it is a list of the factors raised by the arguments of counsel in this case. Upon retrial other factors may be raised. Here the trial court did not have the opportunity to analyze the factors because it relied upon the mistaken objection by the State. Because we have vacated the judgment, we need not reach the harmless error argument of the State on this issue.

The entry is:

Judgment of conviction vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein. Appeal of judgment of probation revocation dismissed.

WATHEN, C.J., with whom CLIFFORD, J. joins, dissents with an opinion.

WATHEN, C.J., with whom CLIFFORD, J., joins, dissenting.

[¶ 33] I must respectfully dissent. In my judgment, we neither adopted nor applied in _State v. Robbins_, 666 A.2d 85 (Me.1995) the three-part test used by the court in this case to determine the admissibility of a photo array. We simply observed in a footnote its use in another jurisdiction. _See Robbins_, 666 A.2d at 88 n. 7. Instead, we found that the court erred in admitting the photo array because it served no purpose. _See id_. at 88. In addition, we found in _Robbins_ that the admission of the photo array was harmless error. _See id_.

318 A.2d 51, 57 (Me.1974); M.R. Evid. 512(b). It would have been proper for the court to have briefly explained the privilege to the victim and, particularly because the victim was a minor at the time of trial, to have inquired of her if she wanted to consult an

[¶ 34] I would not adopt the three-part test. I would continue to leave the decision to the broad discretion of the trial court. _See id_. at 87. Further, I would find any error harmless in this case as well. The lines behind the defendant in the picture did not so clearly identify the picture as a "mug shot" to inform the jury that the defendant may have a prior criminal record. Even if jurors understand the significance of the lines, they are intelligent enough to assume that the photo was undoubtedly taken when the defendant was arrested on the pending charges.

attorney before testifying on the matter. If she wanted to talk with a lawyer, the court could consider the further delay that would cause and the likelihood that a lawyer would advise her to claim her privilege.