MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 112
Docket:      Oxf-18-421
Argued:      May 16, 2019
Decided:     July 16, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ZACHARIAH J. PELLETIER

MEAD, J.

[¶1]  Zachariah J. Pelletier appeals from a judgment of conviction entered by the trial court (Oxford County, *Clifford, J.*) upon guilty verdicts returned by the jury on the offenses of eluding an officer (Class C), 29-A M.R.S. § 2414(3) (2018); driving to endanger (Class E), 29-A M.R.S. § 2413(1) (2018); criminal speeding (Class E), 29-A M.R.S. § 2074(3) (2018); and operating after suspension (Class E), 29-A M.R.S. § 2412-A(1-A)(A) (2018).  Pelletier argues that the court erred by interfering with the State's discretion in deciding whether to dismiss the case and by admitting in evidence a photograph taken at the time of his arrest.  We affirm the judgment.

## I. BACKGROUND

[¶2] "Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Anderson*, 2016 ME 183, ¶ 2, 152 A.3d 623 (quotation marks omitted). On July 11, 2017, a patrol sergeant with the Oxford Police Department observed a vehicle travelling in excess of the posted speed limit. The officer had a clear view of the driver as the vehicle passed; he identified the driver as a male in his twenties with short, dark hair. The officer activated his blue lights, but the driver increased his speed. The officer pursued the vehicle, reaching speeds approaching 110 miles per hour. After the officer was close enough to get the driver's license plate number, he discontinued the pursuit.

[¶3] The officer went to the address listed on the vehicle's registration and learned from the registered owner that her daughter was in possession of the vehicle in question. The owner further told the officer that the daughter lived with her boyfriend, Zachariah Pelletier, and provided the officer with their address. The street address that the owner provided to him led the officer to a booking photograph of Pelletier taken several weeks earlier, and he identified the person in the photograph as the driver. The officer obtained a warrant for

Pelletier's arrest. Upon Pelletier's arrest several months later, a second booking photo of him was taken.

[¶4] In December, Pelletier was charged by indictment with eluding an officer (Class C), 29-A M.R.S. § 2414(3); driving to endanger (Class E), 29-A M.R.S. § 2413(1); criminal speeding (Class E), 29-A M.R.S. § 2074(3); operating after suspension (Class E), 29-A M.R.S. § 2412-A(1-A)(A); and violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2018).

[¶5] Before trial, Pelletier filed a motion in limine seeking to exclude from evidence the photograph that the officer had used to identify Pelletier as the driver of the vehicle that had eluded him, arguing that it was evident that the image was a booking photo and would therefore create an unfairly negative inference regarding his culpability. A pretrial conference was held on the motion at which the State disagreed that the photograph was obviously a booking photograph because the height chart, numbers, and name plate had been removed from the photograph. The photograph included only a "head and shoulders" image of Pelletier in front of a painted cinderblock wall. The court determined that identification was the main issue in the case and therefore the photograph should be admitted. However, the court also ordered that the

4

photograph was not to be referred to as a booking photograph in front of the jury.

[¶6] The parties then proceeded to discuss the second photograph, which was taken at the time of Pelletier's arrest for the charges at issue in the trial. Pelletier asserted that it was inevitable that the jury would understand that the second photograph was a booking photograph because of when it was taken. He argued that the second photograph should not be admitted because it was not used for identification purposes and had no probative value. He argued further that because the two photographs were so similar—"strikingly similar" as the court put it on multiple occasions—if the jury knew that the second photograph was a booking photograph, it would inevitably make the inferential leap to conclude that the first photograph was also a booking photograph, which would be unduly prejudicial. The court ruled that the second photograph would be admitted in evidence because Pelletier's defense questioned the officer's identification of him—the first photograph is what the officer relied on in identifying the driver, and the second photograph, which documents the appearance of the individual actually arrested by the officer, confirms the officer's identification of Pelletier as the driver.[1]

---

[1] The record suggests that Pelletier's physical appearance in the courtroom was somewhat different from his appearance in the photographs.

[¶7]  The court held a one-day jury trial in July 2018.  At trial, despite direct instructions from the prosecution not to describe the photo as a booking photo, the officer testified that the State's first exhibit was "an in-house booking picture from the Oxford County jail."  Pelletier's counsel objected, stating that there had been "an extensive discussion about the first picture.  It was not to be referred to as a booking photo."  Pelletier asked for a curative instruction, which the court gave to the jury.  On cross-examination, the officer admitted that he had incorrectly stated the vehicle's registration number on direct examination and in his initial report.

[¶8]  After the officer's testimony, the prosecutor requested a bench conference.  The following colloquy took place out of the presence of the jury.

Defense:  Did you rest?

State:  No.

The court:  He has not rested.

State:  However, Your Honor, if I do rest now and if counsel makes a motion for acquittal, I won't object.  That was just—

Defense:  I make a motion for acquittal, Your Honor.

State:  I rest.  Now she makes a motion for acquittal.

The court:  Okay.  I have to view this in the light most favorable to the [S]tate.

State:  So do I.

The court:  I deny the motion for judgment of acquittal.

Defense:  You're denying what?

The court:  I'm denying [] the motion for judgment of acquittal—

Defense:  Okay.

The court:  —on both Counts 1, 2, 3, 4, and 5.  Okay.  So where are we at now?

State:  Well, I think I'm going to dismiss the case, Your Honor.  That was just totally—I mean first of all, when he—I told those guys every which way don't talk about booking photos, don't talk about the booking photos.  I gave them a handout with bold underlined italic saying don't talk about booking photos.  He did it. So that was strike one.  Now I think he's up to about strike five or six.  I just—no.

The court:  So—

State:  I mean the registration—I don't know how I can argue that.

The court:  Well, it's a mistake in administration, but it's—can't they infer it's the same car?

Defense:  Well, I think [the prosecutor] has indicated he is going to dismiss.

The court:  That's fine.

State:  Well—

The court:  It's up to the [S]tate.  I don't think he has to dismiss and I would not—

State:  Well, I tell you what, I'll see it through, but I'm kind of disgusted.

The court:  No, that's up to you.

State:  I'll call [the State's next witness] and see what he has to say.

The court:  Do you want to take a break for lunch and think about it?

State:  Yes.

The court:  Okay.  So we'll excuse them until 1:15 and then—you know, it's—it's your case, it's your—

State:  I know.

The court:  But I would—I don't think that's—I don't think that's fatal in the sense that he has identified the defendant, he's got—he's got the number wrong on the plate, but that's—otherwise it's the same vehicle.

State:  Well, this is true.

Defense:  But the only way he had it was through an error in a plate number that was erroneously given somehow, I don't know.

State:  You know, when I listened, when I first watched the video, I listened to the video, I thought the number that he called in was not the same as the number in the report, and I—the audio was so bad, I just—

Defense:  It was bad.

The court:  Okay.  So we'll take—we're going to recess and reconvene at 1:15.

State:  Thank you.

[¶9]    After the recess, the prosecutor proceeded with the State's case-in-chief by calling the State's next witness, and the trial resumed.  The jury found Pelletier guilty of Count 1, eluding an officer; Count 2, driving to endanger; and Count 3, criminal speeding.  By agreement, the court decided Counts 4 and 5, and it found Pelletier guilty of Count 4, operating after suspension, and not guilty of Count 5, violation of condition of release.  The court sentenced him to five years' incarceration, all but forty months suspended, and two years' probation on Count 1; a $575 fine and a 30-day loss of license on Count 2; a $500 fine on Count 3; and a $250 fine on Count 4.  Pelletier timely appealed from the judgment of conviction, *see* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1), arguing that the court erred by (1) interjecting its opinion that the State should not dismiss its case after the State announced that it planned to do so and (2) admitting the second booking photograph in evidence.

## II.  DISCUSSION

A.    Judicial Interference

[¶10]  Pelletier argues that, when the court interjected its opinion about whether the State should dismiss the case against Pelletier, the court interfered with the executive branch's authority to prosecute crimes, and thereby violated

the doctrine of the separation of powers.  *See* Me. Const. art. III, § 2.  Because

Pelletier did not object to what he now alleges was error, we review for obvious

error.  *See* M.R. Crim. P. 52(b); *see also State v. Spearin*, 477 A.2d 1147, 1156

(Me. 1984).  "For an error or defect to be obvious for purposes of Rule 52(b),

there must be (1) an error, (2) that is plain, and (3) that affects substantial

rights.  If these conditions are met, we will exercise our discretion to notice an

unpreserved error only if we also conclude that (4) the error seriously affects

the fairness and integrity or public reputation of judicial proceedings." *State v.*

*Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147.

[¶11]  Pursuant to 30-A M.R.S. § 284(2) (2018), "The district attorney

may dismiss criminal cases in such manner and under such circumstances as

the Supreme Judicial Court may provide by rule."  Maine Rule of Unified

Criminal Procedure 48(a) states:

> The attorney for the State may file a written dismissal of an indictment, information, or complaint or any count of an indictment, information, or complaint, setting forth the reasons for the dismissal, and the prosecution relating to that dismissal shall thereupon terminate.  Such a dismissal may not be filed during the trial without the consent of the defendant.

Dismissal of a case is therefore an exercise of one aspect of prosecutorial

discretion.  *See* 2 Cluchey & Seitzinger, *Maine Criminal Practice* § 48.2 at IX-101

(Gardner ed. 1995).  If the court impermissibly interferes with an executive

function, the doctrine of the separation of powers is implicated. *See* Me. Const. art. III, § 2; *In re Cox*, 553 A.2d 1255, 1258 (Me. 1989); *cf. State v. Fixaris*, 327 A.2d 850, 852-54 (Me. 1974).

[¶12] Pelletier argues that, although the State had not yet filed a written dismissal as required by Rule 48(a), the court interfered with the prerogative of the executive branch by intruding into the State's decision-making concerning whether to dismiss the case. He cites to *Ferrell v. United States*, wherein the District of Columbia Court of Appeals held that the trial judge impermissibly interfered with the prosecutor's decision to dismiss the case when the judge effectively substituted her views for the prosecutor's. 990 A.2d 1015, 1021-23 (D.C. 2010). The *Ferrell* court held that the record demonstrated plain error because the judge did not explain to the prosecutor that she did not have authority to make the decision about whether to dismiss the case. *Id.* at 1022.

[¶13] Here, in contrast, the court was clear that the prosecutor was the decision-maker. The prosecutor stated, "I think I'm going to dismiss the case," and the court replied, "it's up to the [S]tate," and "that's up to you," and "it's your case." The prosecutor responded, "I know." Pelletier did not object. The court never substituted its judgment for that of the State, and neither party

proceeded as though it was under the impression that dismissal was the court's decision. To the contrary, the court repeatedly told the prosecutor that the decision of whether to dismiss the case was the State's, and the prosecutor's response suggests that he understood that he alone was to make the decision.

[¶14] The *Ferrell* court also expressed concern about the trial judge commenting on the sufficiency of the evidence but ultimately determined that any error was not plain because no precedent from that jurisdiction or the Supreme Court established that it is plainly erroneous for a judge to comment on the strength of the State's case. *Id.* at 1022 n.8; *see also State v. Fahnley*, 2015 ME 82, ¶ 35, 119 A.3d 727 (an error is plain when "the error is so clear under existing law that the court and the prosecutor were required to address the matter even in the absence of a timely objection"). We likewise do not find any authority to suggest that every comment made by a court regarding the strength of the State's case constitutes plain error, and we decline to adopt such a standard today—particularly where, as here, the court's comments can be seen to explain its contemporaneous denial of Pelletier's motion for acquittal, which necessarily required the court to assess the sufficiency of the evidence.[2]

---

[2] Moreover, we note that "[t]he paramount concern in cases involving judicial intervention has been that the court not participate in any manner [from] which the jury may infer that it endorses the cause of one side. Because the jury was unable to hear the court's comment to counsel, this

*See* M.R. Crim. P. 29(a); *see also State v. Dolloff*, 2012 ME 130 ¶¶ 70-71, 58 A.3d 1032 (emphasizing the importance of context in determining the impropriety of statements at trial).

B. Admission of the Second Photograph

[¶15] Pelletier next challenges the admissibility of the second booking photograph.[3] "We have established a three-part test governing the admission of booking photographs: (1) the prosecution must show a demonstrable need to introduce the photograph; (2) the photograph, if shown to the jury, must not imply that the defendant has a prior criminal record; and (3) the introduction at trial must not draw particular attention to the source or implications of the photograph." *State v. Thongsavanh*, 2004 ME 126, ¶ 5 n.6, 861 A.2d 39 (quotation marks omitted); *see also State v. Almurshidy*, 1999 ME 97, ¶ 14, 732 A.2d 280.

[¶16] Although the court did not expressly articulate this analysis in admitting the second booking photograph, the record demonstrates that the court adequately considered each of those factors. *See State v. Powers*,

---

concern is absent." *State v. Discher*, 597 A.2d 1336, 1340 (Me. 1991) (alterations, citation and quotation marks omitted).

[3] Although at trial Pelletier objected to the admission of the first photograph, on appeal he does not challenge the court's decision to admit that exhibit.

489 A.2d 4, 6 (Me. 1985) ("Absent a showing to the contrary, a trial judge is presumed to know the law and to have applied it correctly in any given case."); *cf. In re Nikolas E.*, 1998 ME 243, ¶ 19, 720 A.2d 562 (reasoning that the court did not apply an improper legal standard in reaching its decision when the finding under the correct standard was implicit in the court's conclusion); *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d 568 (holding that, although the court did not explicitly apply the correct standard, the court's finding demonstrated satisfaction of the first element of the claim, and therefore the court did not err).

[¶17] The court did not abuse its discretion in determining that the photograph was admissible. *See State v. Joy*, 452 A.2d 408, 412 (Me. 1982) (stating that whether to admit a photograph is a matter within the sound discretion of the trial judge and we therefore review only for abuse of discretion).

[¶18] With regard to the first prong, the State showed a demonstrable need to introduce the photograph because Pelletier challenged the officer's identification of him as the driver. *See State v. Dill*, 2001 ME 150, ¶ 17, 783 A.2d 646; *Almurshidy*, 1999 ME 97, ¶ 15, 732 A.2d 280; *see also State v. Kalex*, 2002 ME 26, ¶ 12, 789 A.2d 1286 (citing cases to support the proposition

14

that photographs have greater evidentiary value when identification is an issue). Before trial, the parties addressed the admissibility of the second photograph. Both parties agreed that identification was at issue, and the court determined that the photo would be admitted because Pelletier was disputing the State's allegation that he had been the operator of the vehicle. The demonstrable need for the admission of the first photograph was certainly greater than for the second, because it was the first photograph that the investigating officer used to identify Pelletier as the operator of the vehicle. At trial, Pelletier's attorney agreed that the first photograph depicted Pelletier, but no stipulation to that effect was reached or placed on the record. Consequently, the second photograph had some measure of probative value because, as the prosecutor stated, Pelletier had "changed his appearance, he's clean shaven now. . . . So this shows his appearance." The person in the two photographs is plainly one and the same. Therefore, the second photograph—an image of the person who was arrested—was not without relevance to corroborate that the person depicted in the first photograph—the person who committed the crimes—was Pelletier.[4]

---

[4] Contrary to instructions given to him by the prosecutor, the investigating officer volunteered while testifying that the first photo was a booking photograph. After a sidebar conference and at Pelletier's request, the court instructed the jury to disregard the officer's statement. Even if the court's instruction was not efficacious in this instance, *but see State v. Dolloff*, 2012 ME 130, ¶ 55,

[¶19]   Next, the second photograph did not necessarily imply that Pelletier had a prior criminal record.  We have held that there is no indication that a photograph is derived from a mugshot when—as here—"[t]here are no identification numbers, height lines, or other things typical of mug shots." *Dill*, 2001 ME 150, ¶ 17, 783 A.2d 646; *see also Almurshidy*, 1999 ME 97, ¶ 16, 732 A.2d 280 (reasoning that a photograph that clearly shows a height chart tends to inform the jury that the defendant may have a prior criminal record).

[¶20] Although the jury easily could have concluded that the photos were mugshots, given the state of the evidence in this case, the inquiry prescribed by our case law is whether the second photograph necessarily implied that Pelletier had a criminal *record*. *See Almurshidy*, 1999 ME 97, ¶ 14, 732 A.2d 280. Here, the officer testified that sometime after the incident giving rise to this case, he applied for an arrest warrant for Pelletier and that the next time he had direct contact with Pelletier was several months later, in September, which was when he either took the second photograph or arranged for that photo to be taken.  From this testimony, it would be evident to a jury that the contact was

58 A.3d 1032 (stating that "[j]uries are presumed to have followed jury instructions, including curative instructions"), any prejudicial spillover effect regarding the second photograph would not have been as great as it might have been with the first photograph because, as we discuss above, the second booking photograph was taken when Pelletier simply was arrested for the pending charges—an event that surely would not have been surprising to the jury.

Pelletier's arrest, which then led to a booking photo—all as part of the case that was being tried to the jury and not some other matter that resulted in an unrelated conviction. Therefore, the second photograph does not necessarily imply that Pelletier had a criminal record but only that he was arrested and processed for the charges at bar.

[¶21] With respect to the third prong, the introduction of the second photograph at trial did not draw particular attention to the source or implications of the photograph. The photograph was briefly identified before it was offered and admitted in evidence, but it was not mentioned at any other time in the jury's presence, including during the State's opening statement and closing argument. As discussed above, although a jury could have inferred that the second photograph was taken when Pelletier was arrested and booked on the pending charges, no further implication or information regarding the source of the photograph is established by its admission into evidence.

[¶22] Accordingly, the court acted within the bounds of its discretion by admitting the second photograph.

[¶23] Beyond that, even if admission of the photograph had been erroneous, any error was harmless. "A preserved error should be treated as harmless if it is highly probable that the error did not affect the factfinder's

judgment." *State v. White*, 2002 ME 122, ¶ 16, 804 A.2d 1146 (quotation marks omitted).   Given the officer's testimony at trial—that he traced the vehicle's registration to Pelletier's girlfriend's mother who in turn directed him to Pelletier; that he located the vehicle at Pelletier's residence; that he identified Pelletier as the operator based on the first photograph; and that the person in the courtroom was the person he had observed driving the vehicle—it is highly probable that the second photograph, which was taken after Pelletier was simply arrested for the charges in this case, did not affect the jury's verdict.  *See id.*

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Zachariah J. Pelletier

Andrew S. Robinson, District Attorney, and Joseph M. O'Connor, Asst. Dist. Atty. (orally), Office of the District Attorney, South Paris, for appellee State of Maine

Oxford County Unified Criminal Docket docket number CR-2017-374
FOR CLERK REFERENCE ONLY