MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2019 ME 171
Docket:       Wal-19-101
Argued:       November 4, 2019
Decided:      December 23, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ANDREW M. SOUSA

HJELM, J.

[¶1]   Andrew M. Sousa appeals from a judgment convicting him of robbery and unlawful possession of scheduled drugs, entered by the trial court (Waldo County, *R. Murray, J.*) after a jury trial.  Sousa asserts that the court erred by overruling his objection to an aspect of the State's closing argument that, he contends, improperly suggested that he had the burden of proof.  Sousa also argues that he was denied a fair trial because the court failed to address sua sponte the State's alleged misstatement of evidence in its rebuttal argument. We affirm the judgment.

## I. BACKGROUND

[¶2]   We draw the following account of the case from the procedural record and the evidence seen in the light most favorable to the State, *see State v. Pelletier*, 2019 ME 112, ¶ 2, 212 A.3d 325.

[¶3]   On April 9, 2018, Sousa walked into a pharmacy in Unity.   His clothing was entirely black, and his head was mostly concealed; only his eyes and hands were exposed.   Sousa went to the counter and showed the clerk a note, which directed her to "give [him] all the oxycodone."   Despite Sousa's effort to conceal his identity, the clerk was able to recognize him because he was a long-time customer there.   Because of the manner of Sousa's dress, his demand for the drugs, and the way he looked at her while keeping one hand in his pocket, the clerk was fearful that if she did not comply, he would react violently.   The clerk talked with the pharmacist, who filled a bag with well over one thousand oxycodone pills, and either the clerk or the pharmacist then gave the bag to Sousa.   Sousa, who said nothing during the episode, walked out of the pharmacy.   The pharmacist activated a distress alarm, and the police responded to the scene.   The incident in the pharmacy was recorded by the store's surveillance camera.   Law enforcement officials went on the lookout for Sousa

until, nine days later, officers arrested him in the vicinity of an encampment in the woods. When he was arrested, he was in possession of nearly 800 pills.

[¶4] Several days after the incident, before he was arrested, the State filed a criminal complaint charging Sousa with robbery (Class B), 17-A M.R.S. § 651(1)(B)(2)(2018). Sousa was later indicted for that crime and an additional offense, unlawful possession of scheduled drugs (Class D), 17-A M.R.S. § 1107-A(1)(C) (2018). Sousa pleaded not guilty to both charges, and the court held a two-day jury trial in February of 2019. At trial, the recording from the store's surveillance camera was shown to the jury, and the parties stipulated that Sousa was the person who committed the act in the pharmacy. The contested issues were whether the State proved that Sousa had placed the clerk in "fear of the imminent use of force" and, if so, whether he did so "intentionally or knowingly." *See* 17-A M.R.S. § 651(1)(B)(2).[1]

---

[1] Title 17-A M.R.S. § 651(1)(B)(2) (2018) provides:

> A person is guilty of robbery if the person commits or attempts to commit theft and at the time of the person's actions:

> ….
> B. The actor threatens to use force against any person present or otherwise intentionally or knowingly places any person present in fear of the imminent use of force with the intent:

> ….

> (2) To compel the person in control of the property to give it up or to engage in other conduct that aids in the taking or carrying away of the property.

4

[¶5]  To support his contention that he did not act with the culpable state of mind necessary to commit the crime of robbery, *see* 17-A M.R.S. § 38 (2018) (stating that "[e]vidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind"), Sousa presented the testimony of a clinical neuropsychologist who testified that Sousa had been diagnosed with an unspecified schizophrenia spectrum disorder.  During Sousa's questioning, the witness testified about the interrelationship between Sousa's mental illness and the emotional and physical pain that was affecting Sousa around the time of the incident:

> Q:  Do you have an expert perspective on the question of [Sousa's] state of mind at the time that he went into the pharmacy as it bears on this case?
>
> . . . .
>
> A.  Essentially as I reviewed everything and obtained all this information, it struck me that Mr. Sousa was able to act in [a] goal directed manner at that time as far as he had a goal to get medications, he was in severe agony, severe pain, and he wanted to get pain medications.  He described how he had been living in very dire straits, essentially, and put in circumstances which increased his pain, his stress, and his general level of emotional difficulty. . . . So I think there was a very strong psychological component as well to his pain which worsened the whole situation, including some of it being related to his various delusions or ideas about where some of that pain came from.  He was extremely frustrated, very angry about his situation, and essentially very desperate.  At the time I believe that he, again, was just looking to have a basic need met.  He was in severe pain, severe agony, and wanted some

relief, and I think that was about the extent of his thought process at that time.

Q: Do you believe that this combination of factors likely had a negative impact on [Sousa's] ability to know the effect that his actions would have on other people?

A. I do. I think given all of those facts and the severe state he was in at that time that, again, he was essentially seeing his immediate needs.

[¶6] During the State's cross-examination, the expert testified that Sousa's mental illness did not prevent him from having a "general" awareness that taking the pills was wrong. Also during cross-examination, the expert was asked whether Sousa was experiencing delusions when he entered the pharmacy:

Q: In your conversation with Mr. Sousa and your evaluation of him, did you see any indication that he was experiencing any kind of delusion or anything of that nature when he went into the pharmacy . . . ?

A. [T]here was still [an] indication that he was holding beliefs about some of the sources of his pain. Again, that he had been tortured or poisoned or had other reasons to have that pain. He did not express any delusions, for example, about the pharmacy or about persons there or about . . . what would occur if he were to take those pills. They . . . were not delusions of that sort.

Q. So he was clear about what he was doing based on your meeting with him and your conversation with him?

A. I'd say yes, he knew that he was going to a pharmacy to get pills.

6

[¶7]  Later in the trial, during the State's rebuttal closing argument, the prosecutor addressed the neuropsychologist's testimony and told the jury:

> There's no evidence, for example, that Mr. Sousa was experiencing any form of delusion at the time he went into the pharmacy on April 9 . . . . He knew what he was doing.  He knew he was wearing a mask.  He knew he was confronting people.  He knew he was—

At that point, Sousa objected on the ground that the State's argument improperly shifted the burden of proof to Sousa because it suggested that Sousa had an obligation to provide evidence that he was delusional at the time of the incident.  The court overruled the objection, explaining that the State's argument did not have that effect.  The court also stated that, as part of its final instructions, it would instruct the jury that the burden of proof rests solely with the State.  The court did exactly that.[2]

[¶8]  The jury found Sousa guilty of both counts.  The court later sentenced Sousa to four years in prison for robbery and, for the drug charge, six months to be served concurrently.  Sousa filed a timely appeal from the resulting judgment.  *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

---

[2] The court instructed the jury, "[T]he burden of proof is entirely on the State.  The defendant does not have to prove anything."  The court then instructed the jury on the presumption of innocence.

## II.  DISCUSSION

[¶9]  We address Sousa's two contentions on appeal in turn.

A.      Shifting the Burden of Proof

[¶10]  Sousa first argues the State committed prosecutorial misconduct during its closing argument by telling the jury that there was "no evidence" that Sousa was experiencing delusions when he entered the pharmacy.  This, Sousa contends, implied to the jury that the burden of proof rested on him.  Sousa further contends that this statement improperly suggested that the State had met its burden of proof because Sousa did not present evidence that delusions prevented him from "intentionally or knowingly" acting.  *See* 17-A M.R.S. § 651(1)(B)(2).  From this, Sousa asserts that the court erred by overruling his objection to the State's argument.[3]

[¶11]  "When examining instances of alleged prosecutorial misconduct, we first determine whether the misconduct occurred and, if it did, view the comments of the prosecutor as a whole, looking at the incidents of misconduct both in isolation and in the aggregate."  *State v. Clark*, 2008 ME 136, ¶ 7, 954 A.2d 1066 (quotation marks omitted).  Where misconduct has occurred and the issue was preserved, we review the record for harmless error and "affirm the

---

[3]  Sousa did not ask that the court impose any particular form of relief to cure the claimed misconduct.  Rather, he merely objected.

conviction if it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments." *State v. Cheney,* 2012 ME 119, ¶ 34, 55 A.3d 473 (quotation marks omitted).

[¶12]  Simply put, there was no misconduct here.  The prosecutor's argument to the jury did not suggest that Sousa carried any burden of proof. Rather, the prosecutor merely described and analyzed the evidence presented through Sousa's expert witness.  In doing so, the State did not suggest to the jury, as Sousa contends, that he had an obligation to prove that he was experiencing delusions when entering the pharmacy.  Furthermore, the court informed the jury generally during its instructions that Sousa had no burden of proof whatsoever.  The court also properly instructed the jury on the particular legal significance of evidence of Sousa's mental health, telling the jury that it could consider evidence of Sousa's abnormal state of mind to determine whether it "raise[d] a reasonable doubt as to the existence of a required culpable state of mind."  *See* 17-A M.R.S. § 38; *State v. Griffin*, 2017 ME 79, ¶ 12, 159 A.3d 1240; *State v. Murphy*, 496 A.2d 623, 632 (Me. 1985).

[¶13]  Because there was no prosecutorial misconduct, the trial court did not err by overruling Sousa's objection, and in any event Sousa's concern that

the jury misapprehended the State's argument was ameliorated by the court's correct and thorough instructions on the burden of proof.

B.      Misstatement of Evidence

[¶14]  Sousa also contends that the State misstated evidence during its rebuttal closing by arguing that there was "no evidence" that Sousa was experiencing delusions at the time of the alleged robbery.  Sousa contends that this was an incorrect characterization of the evidence because the neuropsychologist did testify that Sousa was then experiencing some measure of delusional thinking.

[¶15]  Although Sousa objected to that part of the State's summation based on his contention that it improperly shifted the burden of proof, he did not object to the prosecutor's description of the evidence itself.  Therefore, we review this contention for obvious error.  *State v. Gould*, 2012 ME 60, ¶ 16, 43 A.3d 952.  To show obvious error, there must be "(1) an error, (2) that is plain, and (3) that affects substantial rights."  *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted).  "[I]f these three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *Id*. (quotation marks omitted).  "When a prosecutor's statement is not sufficient

to draw an objection, particularly when viewed in the overall context of the trial, that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding." *Id.* ¶ 38.

[¶16] "When prosecutorial misconduct is alleged, we assess whether there was actual misconduct and, if so, whether the court's response was sufficient to remedy any resulting prejudice." *State v. Ayotte*, 2019 ME 61, ¶ 12, 207 A.3d 614. "The mere existence of a misstatement by a prosecutor at trial, or the occasional verbal misstep, will not necessarily constitute misconduct when viewed in the context of the proceedings." *Dolloff*, 2012 ME 130, ¶ 44, 58 A.3d 1032.

[¶17] Here, the State did not materially misrepresent the evidence when it argued that there was "no evidence" that Sousa was experiencing delusions during the robbery. Sousa's expert witness testified that, in his opinion, Sousa had no delusions about matters that were central to the incident: the pharmacy, the people who were present, and the consequences of stealing prescription drugs. As the neuropsychologist stated directly, "[Sousa] knew that he was going to a pharmacy to get pills." According to the expert, Sousa also appreciated the wrongfulness of his conduct.

[¶18]  The neuropsychologist did describe a more attenuated connection between Sousa's mental illness and the incident at the pharmacy.  The witness explained that Sousa had been experiencing considerable physical pain, which had a heightened effect on him because he attributed the pain to extrinsic sources that reflected a delusional thought process.  To seek relief from the pain, Sousa decided to go to the pharmacy to obtain drugs.  According to the expert, Sousa could not see past "his own immediate needs" and therefore was unable to appreciate the effect of his actions on others.

[¶19]  To this limited extent, there *was* evidence that Sousa's delusions played some role in the alleged robbery.  Given the expert's more central testimony, however, that Sousa understood the nature of his conduct and appreciated many of the circumstances bearing directly on the incident, any mischaracterization of the evidence as containing "no evidence" of delusional thinking at the time of the incident was not of such a magnitude to have required the court to intervene sua sponte.  Thus, the court committed no obvious error.

The entry is:

Judgment affirmed.

12

Harris A. Mattson, Esq. (orally), Silverstein Law, P.A., Bangor, for appellant Andrew M. Sousa

William B. Entwisle, Esq. (orally), Prosecutorial District No. VI, Belfast, for appellee State of Maine

Waldo County Unified Criminal Docket docket number CR-2018-292
FOR CLERK REFERENCE ONLY